Good morning, your honors. May it please the court. I'm Colleen Cassidy and I represent Mr. Lawrence on appeal from his conviction for gun possession. In this simple gun possession case, the district court admitted ATF expert testimony about the street value of the guns seized and the gun trafficking market in general, including details about his undercover operations and the bad guys buying and selling guns on the street. It was irrelevant and it was prejudicial because it suggested that Lawrence must have been involved in this underworld. In fact, there was no evidence about how this gun had been acquired and no evidence or even charge or anything real about that Mr. Lawrence ever had anything to do with buying and selling guns. Now, the government argued that the street price... Well, in fact, the expert said that, right? Like you got, you asked on cross whether there was any evidence that Mr. Lawrence had bought the gun or was involved in a gun trade and the ATF agent said that there was not. He had no such evidence, right? Well, that's correct, but he couldn't just make up false facts. So, well, I don't think we're false facts, but you're saying that he couldn't introduce irrelevant facts, which is the relevance of it. Right. But Lawrence argued that the gun had been abandoned, right? That it was found by the officers while they were pursuing him and that they put it in the backpack, right? Yeah, the argument, the argument, Your Honor, was that it was found somewhere around and that they, to smooth over the case, the officer had said that he found it in the backpack. So, if the gun had a high street value, wouldn't it make it less likely that it had just been abandoned? No, because the government's whole theory was that Lawrence abandoned it. It didn't make any sense and they didn't even argue that theory. They didn't argue that it would make no sense for someone to abandon it on the ground. That, after all, was what they were arguing Lawrence did. There were six other men who'd run that night. Well, Lawrence would have abandoned it while being pursued by the police. So, right, but Lawrence's no, he didn't. The police must have found the gun separately on the ground and somebody else abandoned it. Right, because there were other people running that night. Lawrence wasn't the only one. When the police pulled up and got out of their car, undercover police in an unmarked car, everybody scattered. A lot of men ran and that was established by the video, which the others- So, it could have been abandoned by somebody else who was being pursued. Exactly. But it also could have just been found there nearby. Right, correct. He never argued that someone put it in his backpack. That was the theory that the government argued it was relevant to, was that somebody would have put it in his backpack. But regardless of whether somebody put it in his backpack or not, the predicate for the defense is that it was abandoned by somebody, right? Yes, it was somebody else. Doesn't it make it less likely that it was abandoned if it has a high street value? Well, then it would make less likely that Lawrence would abandon it also. I don't think that makes sense. But even if it was marginally relevant, the expansive testimony that the ATF agent gave was not relevant to anything. He had already been qualified. The government argued in his brief that this was about his qualifications, but he was already qualified. He was qualified at page A198 to 199 by the judge before these questions began. And there was an additional argument, an objection on relevance grounds by defense counsel when he was asked to describe his undercover operations after he'd already been qualified. Then, even later, he came back to that. Later, way, way after any kind of discussion of qualifications, he came back and repeated the So, even if the actual street value had some marginal relevance, tangential relevance to the case, the extra testimony about the gun trafficking had no relevance to anything. And it was extremely prejudicial. But how does undercover buys? Is that what you mean? The undercover buys, posing as bad guys, the use of the word bad guys multiple times, bad guys on both sides of the deal, the buyers and the sellers. It had nothing to do with the case. So the question is, do you know how much a gun like this is worth on the street in New York City? And he says, undercover would pay $750 to $850. And the question is, how do you know that? And then he has one, two, three sentences about how he does undercover buys to explain how he knows that. Is that the objectionable testimony? It's more than that. So how do you know that? It's at page 201. When he's asked how he knows that, he's already got it, page 200, A200, that he's been involved in undercover buys many times, and he's done them himself. And so that's it. That's all he needed to say. Instead, he goes on. Prosecutor asks, can you explain to us what an undercover buy is? Objection to relevance as to all that testimony. And then he goes on for two pages explaining how he's been out posing as a bad guy buyer, trying to buy guns from bad guy sellers. Couldn't you have just stipulated to the price of the gun and made all of this sort of unnecessary? Well, there's no requirement that a defense stipulate to anything. No, I'm not saying that you were required to do so, but now you're objecting to sort of the basis for that supported the price that he gave, which I think is conceded as marginally relevant. But the court had already ruled on that. The court had already ruled that he'd established his qualifications already to testify about the value of the gun. The extra testimony about all the kind of seedy underworld that he was engaged in was completely unnecessary to that. And then he came, he got, he even surveyed him. Well, let me ask you about the bad guys thing. I mean, as I was reading it, it seemed like the context was that this is an illegal purchase. Isn't the bad guy, good guy sort of language consistent with that hypothetical transaction that he's describing? Well, there was no evidence that Mr. Lawrence had ever purchased a gun at all. Even if he had the gun, even if this was his gun, he could have gotten that, someone could have given it to him. There was no evidence that he was out in the market of gun trafficking, buying illegal guns. And there was no reason. But your argument is with the language bad guy, right? Right. And it's with, it's with, that makes it even more prejudicial, but it's, the argument is with the relevance of this testimony at all. That there was absolutely no need for it. It was over the top, just kind of smearing Mr. Lawrence with this, with this bad guy world. Like in the Zong case, it associated him with these bad guys who were selling and trafficking guns on the street. Also, the agent testified that the reason somebody would want to buy a gun on the street, again, where there's no evidence that Mr. Lawrence ever bought a gun on the street, was to get an untraceable gun, to get a gun that couldn't be tracked to them. When in fact, anybody who buys a gun on the, almost anyone in New York, if they wanted a gun for any, any reason, would have had to, before Bruin, buy a gun somehow on the secondary market. Because you couldn't, can't just walk into a store and buy a gun in New York without a license, which were very hard to get. So all of this was just excessive, over the top testimony, suggesting a very dangerous world of gun traffickers buying and selling untraceable guns.  Now, should I? I see my red light is on, but I could address harmless error if the court wants, wishes to hear it. Sure. Okay. Why don't you just go ahead. Okay. So, so, this was not harmless, because this case, in fact, came down to the testimony of Officer Esposito. It relied completely on his testimony. His testimony was not corroborated in any important respect. The circumstances around his finding the gun were not corroborated by the video. The video only showed, the video that the government brought in to court, only showed the beginning of the chase, before he dropped the backpack, before any gun was found. The other officer who was on the scene, Officer Katrynek, somehow did not see any of this happen. He said he was running behind in what was a one-minute chase, so he didn't see the recovery of the gun or the backpack either. And the third officer who would have had to have seen the events, because he grabbed Lawrence along with Esposito, didn't testify. So there was no corroboration. It all came down to his testimony, and as I explained in my brief, it was riddled with inconsistencies. He had given prior inconsistent statements on virtually every detail. So do you think he was convicted because the jury believed that he was involved in illegal gun trafficking? I think it could have tipped the case over. They were obviously deliberating on the facts, but this was a side issue that may have come into play, that may have affected the jurors' deliberations on their verdict. I don't think we can say that there's a fair assurance that it did not contribute to the verdict. It was a short trial, so this is a relatively large piece of evidence. It wasn't a tiny little thing in a 1,000-page record. So, okay. Thank you, Your Honors. Assistant United States Attorney Kayla Benson, speaking on behalf of the government. Good morning, Your Honors. Defense counsel is urging this court to overturn a jury's verdict based on very limited and discreet testimony about the value of the defendant's gun, testimony that was relevant to prove the defendant possessed that gun knowingly, which was the sole factual dispute at the trial in this case. Judge Weinstein's and then Judge Deary's admission of this testimony was not an abuse of discretion, and it should not in any event result in overturning the jury's verdict in this case, where video showed the defendant fleeing from officers with a loaded gun in his backpack and his DNA on that gun. So I'll just briefly address... Video showed the gun in the backpack? No. Video didn't show the gun in the backpack. Video showed the defendant fleeing with the backpack. With the backpack. Correct, Your Honor. There was no video available for the actual stopping of the defendant and the recovery of the firearm. So just to briefly address that there was no abuse of discretion in the admission of the testimony. I think the idea that there was some sort of defense theory that both the parties and the district court were aware of prior to the start of the trial in this case is just unsupported by the record. The defendant's own post-arrest statement, he said that the backpack was out of his sight for a brief second, and that's when the gun must have gotten into the backpack. And so that was sort of the starting point of the government's belief that where the gun came from was going to be relevant in this case. The government could have admitted that post-arrest statement during the trial itself. We ultimately didn't feel that we needed to, but it could have come into the case. And so the idea that there was some sort of start at this trial where the theory was that the gun was in a plastic bag nearby simply wasn't the defense theory. And I think that that is borne out by the pretrial conference as well. So throughout the whole trial, there was no consistent defense theory. So I understand the point about the value of the gun making it less likely that it was just abandoned or tossed aside by somebody randomly, but what's the relevance of your adversary's objection, it seems like, as to the testimony about the secondary market generally and sort of the language that was used to describe that? Why was that necessary? So that came up in two places throughout the whole record. The first was before the expert had been qualified as an expert witness, before the jury itself.  how the expert had the ability to opine to the jurors about the value of guns on the secondary market. And then it came up one other time when we elicited that the gun was worth, I think, $350 at retail, up to $850 on the secondary market. And at that point, my colleague again asked, how do you know that? And again, there was very limited testimony as to why the expert knew that. And so that was really just context for the expert making the statement. The basis of the statement. And the statement itself is relevant. Why? To counteract a theory that the gun had been abandoned. Correct. You just said a moment ago that there wasn't a consistent defense theory. Well, the defense theory was always that the gun wasn't the defendant's. And so the issue was, did the defendant knowingly possess this gun? And so even in rebuttal, in the defense summation, they had argued that we don't know where the gun came from. That's the government's burden. The government has to prove this. And so in rebuttal, we actually went through all of the ways that the gun's value would be relevant here. If it was in the defendant's backpack, it's a valuable object. If it was laying there on the street, it's very unlikely that an $850 valuable object would be just laying on the ground at the place where the defendant ran to. And if the officers had somehow planted it, again, it's very unlikely that an officer would just have an $850 gun available to stick into the defendant's backpack. So at each stage, we actually argued it. And the defense just informed the court that this was not in the rebuttal summation, but it was. I think the court can look at pages 522 and 523 of the government's appendix. I also just want to briefly address that any prejudice here is completely speculative. The defense just cited the John case. And I think that where the court has found error are cases where the testimony exceeded its scope by substituting expert opinion for factual evidence. And that is very, very far from this case. This came up a couple times during the expert's direct testimony and very briefly during cross-examination, and that was it. Otherwise, the prejudicial effect of this was never argued by the government in its summation or its rebuttal summation. And I think both parties agree that the thrust of this case was the credibility of the testifying officers and the DNA evidence in the case, and so that's what this case was about. So is it not possible the jury might have inferred that we have this testimony about the origin of this gun involved in undercover transactions in the secondary market? And could the jury not have inferred that the defendant was involved in such a transaction? No, because there was testimony very clearly that the defendant was not. It was never argued by the government, and I think the defense effectively argued that there was absolutely no evidence of that, which there was absolutely no evidence of that. So it's completely speculative and was a tiny part of the case and really didn't bear on the issues that were before the jury and that the jury decided. And as to the credibility of the arresting officer, I think that the record is very clear that there were not, in fact, major credibility issues, but I'm happy to address that if the court has any questions about that or any questions about anything else. Otherwise, the government will rest on its papers. Thank you very much. Thank you, counsel. Ms. Cassidy, you've got two minutes. First, just to nail down this issue of the defense, the defense is right in the opening, and I can quote at page A62. On August 29th of 2018, this is in the opening statement of defense counsel, he had no gun in his hand, no gun in his bag, no gun at all. And then again, in summation, the detailed defense, which was that Officer Desposito found his gun in a bag and it was somehow nearby during the chase and smoothed things over by saying that he found it in the backpack, make the story better. And then please do read the entire government's rebuttal. It's all about knowledge and how, of course, he knew it was in the backpack. He can't deny knowledge, which was never the defense. The statement that is not in the appendix, the government put in its own appendix but didn't put the statement in. It's on the docket sheet in the District Court at 41, number 41. But what Mr. Lawrence did in that statement was he said, that laptop was mine, the gun is not. And somewhere during the course of the interview, when he was asked a lot of questions, he said, well, for about a minute I didn't have the backpack on me, but he never said, someone else put it in. That was not a statement that he made. He just said, that gun is not mine. And that was always the defense. But if the gun wasn't his and it was there, doesn't that mean that there has to be some explanation for where it came from? The passage you read a moment ago about smoothing things over,  finding the gun somewhere nearby and smoothing things over by putting it in the backpack? So it doesn't mean that somebody abandoned it. Yes, that was the defense. When somebody else abandoned it, maybe one of the other six people who was running, somebody else abandoned it and they found it there. We submit that the gun value wasn't relevant to that because that same argument would have to be made against Lawrence as well, against him having it and abandoning it. But even if it was, as I said, even if it was, the rest of the expansive testimony was not. And while the government says, well, you know, defense counsel established on cross and argued in summation that there was no real evidence that he was involved in drug trafficking. No, there wasn't because there couldn't be, but there was the suggestion. There was still the suggestion. And that was what there was in Zahm. I mean, all this extra testimony about other, you know, forced labor cases, there was no testimony that he was involved in those other cases, but he was tainted by association with them, which is exactly the same thing that happened here. Well, there was because in Zahm, it was the same company, right? It was the same course of conduct and it was an earlier series of events and it was being used to inform the nature of the later series of events. Well, that was a separate error in Zahm of the inadmissibility of that testimony. But then there was other testimony, the expert testimony that talked about Chinese forced labor in general. Picking people up at train stations. Right. That was a separate error that the court found in Zahm, separate from the inadmissible 404B evidence. And the basis for that reversal on that ground was that it had tangential relevance to Zahm's case, but risked prejudicing the jury by tainting him with the conduct of others. And also the fact that the defense had to defend against this evidence. Of course the defense had to get up after hearing this evidence and say but agent, you don't have any evidence that Mr. Lawrence was involved in any of these bad guy deals, do you? And then had to remind the jury that he was not, but that just shows how prejudicial it was that the defense actually had to take this on when it shouldn't have been in the case in the first place. So, how should it have been handled? So let's say we thought that the value of the gun was relevant because it makes it less likely that it's abandoned. Is the government not allowed to ask the expert the basis for his knowledge of the value of the gun? He already gave the basis. He already said that he'd been involved in undercover work. So the way it should have happened was he should have just said I've been involved in undercover buys and based on that experience this is the value and he should not have elaborated more. And so the error you think is allowing in the additional elaboration beyond that. Right, which was objected to on relevance grounds specifically after he'd already testified about his long experience as an ATF agent working on gun sales of all kinds then he launched into this undercover operation detailed testimony and that was objected to separately by the attorney general. Okay. Thank you. Thank you both. We'll take the case under advisement. The next argument for today is case number 21-1298 and 21-1803 Great American Insurance Company versus AIG Specialty Insurance Company. I